**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Nina Y. Wang**

Civil Action No. 25-cv-02891-NYW-TPO

DR. KELLY BROWN,

Plaintiff,

v.

POSTERITY HEALTH MSO, LLC, f/k/a POSTERITY HEALTH, LLC,

Defendant.

---

## ORDER ON MOTION TO DISMISS

---

This matter is before the Court on the Posterity Fertility PC Rule 12(b)(6) Partial Motion to Dismiss (the "Motion" or "Motion to Dismiss"). [Doc. 24]. The Court has reviewed the Motion and related briefing and finds that oral argument would not assist in resolution of the Motion. For the following reasons, the Motion to Dismiss is respectfully **GRANTED in part** and **DENIED in part**.

## BACKGROUND

These facts are taken from the Second Amended Complaint and are presumed true for purposes of this Order. Plaintiff Kelly Brown ("Plaintiff" or "Dr. Brown") worked as the Medical Director for Defendant Posterity Health MSO, LLC ("Defendant" or "Posterity") from September 2021 until May 2024. [Doc. 21 at ¶ 7]. Posterity "is a healthcare organization specializing in men's health and low testosterone treatment" that "markets itself as a digital health platform, offering telehealth services to patients." [*Id.* at ¶ 8]. As Medical Director, Dr. Brown "saw patients[,] worked with Posterity to open new offices," "presented to potential investors during fundraising rounds," and "oversaw the work of all

the various Regional Medical Directors." [*Id.* at ¶¶ 30, 33–34]. Her clinical duties included "consultations and surgeries." [*Id.* at ¶ 100]. She also "had additional duties with respect to Posterity's business operations." [*Id.* at ¶ 123].

Dr. Brown and Posterity entered into a two-year employment agreement. [*Id.* at ¶ 23]. Among other terms, the agreement provided that Dr. Brown would receive an administrative bonus to "compensate Dr. Brown for her work on Posterity's digital platform." [*Id.* at ¶¶ 26, 28]. The administrative bonus "was to be paid out in the calendar year following the year in which it was earned." [*Id.* at ¶ 28]. Dr. Brown alleges that she "earned the administrative bonus by performing extra work developing Posterity's digital platform," so Posterity "should have paid Dr. Brown her administrative bonus," but "Posterity only paid Dr. Brown an administrative bonus one time." [*Id.* at ¶¶ 205–08].

The employment agreement also contemplated a productivity bonus based on Plaintiff meeting certain performance metrics. [*Id.* at ¶¶ 26, 29, 227]. Dr. Brown "did not hit the performance metrics because they were unrealistic," but "other doctors" were paid the bonus even though they also did not hit the metrics. [*Id.* at ¶¶ 230–31].

At some point, Dr. Brown learned that two male Regional Medical Directors were being paid a base salary of $500,000 per year, which exceeded her $325,000 salary. [*Id.* at ¶¶ 37, 44]. In September 2023, when her employment contract was set to expire, Dr. Brown met with Posterity's CEO to talk about her new contract. [*Id.* at ¶¶ 42, 46]. Posterity offered to increase her salary, but "only to the lowest level of a male doctor's initial salary." [*Id.* at ¶¶ 48–49]. The new offer also would demote Dr. Brown from Medical Director to Regional Medical Director for the Mountain Region. [*Id.* at ¶ 50]. Later, Dr. Brown was informed that her employment contract "had automatically renewed" and

further contract discussions were deferred. [*Id.* at ¶ 53]. "On May 1, [2024], after months of attempting to renegotiate her contract to achieve pay parity with her male counterparts and learning that Posterity would not increase her compensation, Dr. Brown felt compelled to resign from her position." [*Id.* at ¶ 86].

Dr. Brown sued Posterity on September 15, 2025. [Doc. 1]. She asserts 13 claims: (1) a Title VII sex discrimination claim ("Claim One"), [Doc. 21 at ¶¶ 92–106]; (2) a claim for wage discrimination under the Equal Pay Act ("EPA") ("Claim Two"), [*id.* at ¶¶ 107–18]; (3) a claim for wage discrimination under the Equal Pay for Equal Work Act ("EPEWA") ("Claim Three"), [*id.* at ¶¶ 119–37]; (4) a retaliation claim under the EPEWA, [*id.* at ¶¶ 138–54]; (5) a pregnancy discrimination claim under Title VII, [*id.* at ¶¶ 155–68]; (6) a Title VII retaliation claim, [*id.* at ¶¶ 169–87]; (7) an interference claim under Colorado's Family and Medical Leave Insurance Act, [*id.* at ¶¶ 188–200]; (8) a claim under the Colorado Wage Claim Act ("CWCA") based on an alleged failure to pay bonuses ("Claim Eight"), [*id.* at ¶¶ 201–11]; (9) a claim under the CWCA based on the alleged failure to pay vacation and sick leave ("Claim Nine"), [*id.* at ¶¶ 212–21]; (10) a claim for unjust enrichment, [*id.* at ¶¶ 222–41]; (11) a promissory estoppel claim, [*id.* at ¶¶ 242–54]; (12) a breach of contract claim ("Claim Twelve"), [*id.* at ¶¶ 255–67]; and (13) a claim for unlawful intimidation under Colo. Rev. Stat. § 8-2-113, [*id.* at ¶¶ 268–83]. In its Motion to Dismiss, Defendant seeks dismissal of Claims One, Two, Three, Eight, and Twelve in their entirety and dismissal of part of Claim Nine. [Doc. 24 at 1].

## LEGAL STANDARD

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P.

12(b)(6). In deciding a motion under Rule 12(b)(6), the Court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (quotation omitted). The plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rather, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted).

## ANALYSIS

### I. Claim Two: Wage Discrimination Under the Equal Pay Act

The Equal Pay Act provides in pertinent part that

> [n]o employer . . . shall discriminate . . . between employees on the basis of sex by paying wages to employees . . . at a rate less than the rate at which he pays wages to employees of the opposite sex . . . for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.

29 U.S.C. § 206(d)(1). A prima facie case of wage discrimination under the EPA has the following elements: (1) the plaintiff "was performing work which was substantially equal to that of the male employees considering the skills, duties, supervision, effort and responsibilities of the jobs"; (2) "the conditions where the work was performed were basically the same"; and (3) "the male employees were paid more under such circumstances." *Riser v. QEP Energy*, 776 F.3d 1191, 1196 (10th Cir. 2015) (quotation omitted).[1] An EPA claim "can survive a motion to dismiss only if it goes beyond bare legal

[1] "[T]he 12(b)(6) standard does not require that Plaintiff establish a prima facie case in her complaint," but "the elements of each alleged cause of action help to determine

conclusions and describes how the [plaintiff's] position is substantially equal to the comparable-employee's position." *Paffe v. Wise Foods, Inc.*, No. 24-cv-00402-RMR-SBP, 2025 WL 685213, at *4 (D. Colo. Feb. 25, 2025) (quoting *Connell v. Nat'l Outdoor Leadership School*, No. 19-cv-105-R, 2020 WL 13049356, at *6 (D. Wyo. Apr. 27, 2020)), *recommendation adopted*, 2025 WL 4665681 (D. Colo. Mar. 26, 2025).

Posterity argues that Dr. Brown cannot state a claim under the EPA because she does not allege that her work was substantially equal to male comparators who received higher salaries. [Doc. 24 at 4]. It contends that Dr. Brown "fails to allege specific facts regarding the skills, duties, supervision, effort, and responsibilities of Plaintiff compared to those of male employees as required for an EPA claim" or the "specific type of amount of work performed" by Plaintiff and the comparators. [*Id.* at 5]. Posterity also observes that Plaintiff often references "male employees" generally instead of identifying specific male comparators. [*Id.* at 5–6].

Dr. Brown counters that her EPA wage discrimination claim is sufficiently pled. [Doc. 28 at 3–6]. First, she says that she "identifie[d] two male doctors Posterity hired in April 2023 and July 2023" and she argues that she has "allege[d] that the male employees held similar titles and performed patient consultations and surgeries" and that she "oversaw the male doctors' work." [*Id.* at 4 (citing Doc. 21 at ¶¶ 33, 39–40, 110)]. But contrary to Plaintiff's framing of her own allegation, the Second Amended Complaint does not connect these dots. Specifically, while Dr. Brown *does* allege that two male doctors were hired in 2023, one as a Regional Medical Director and Vice President of Clinical

---

whether Plaintiff has set forth a plausible claim." *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012).

Engagement and the other as a Medical Director and Chief Scientific Officer, [Doc. 21 at ¶¶ 40–41], she does not identify these doctors, claim that these specific doctors earned more than she did, or claim that these specific individuals had similar duties to her, *see generally* [*id.*]; *see also* [*id.* at ¶ 44 (alleging that "two male Regional Medical Directors" earned more than her, but not identifying them or alleging that they had similar duties); *id.* at ¶ 110 (alleging that Dr. Brown and unidentified "male employees" "held similar titles, performed patient consultations and surgeries, and had additional duties with respect to Posterity's business operations," but providing no other detail about these comparators)].[2]

Dr. Brown's remaining arguments similarly require the Court to assume the existence of facts that are not present in the Amended Complaint and draw inferences that, simply put, lack factual support. For example, Dr. Brown alleges that she would see patients in a certain geographic area "until the area had a solid referral base and was generating revenue," at which time she would "recruit doctors to work in those offices" as Regional Medical Directors. [*Id.* at ¶¶ 31–32]. She argues that this supports her EPA claim because "[t]aking over for Dr. Brown implies that the male doctors performed the same duties," as it would be "difficult, if not impossible, for the male doctors to 'take over[]' . . . if the male doctors did not perform the same duties." [Doc. 28 at 4]. But again, there is no detailed information in the Second Amended Complaint concerning these specific male doctors, their respective salaries, or their job duties once they "took over."

---

[2] To be clear, the Court does not suggest that a plaintiff must identify comparators by name to state a claim under Rule 12(b)(6). However, the Court notes the lack of precision in the Second Amended Complaint to help explain why Plaintiff's vague and general allegations are insufficient to state a claim. Indeed, by primarily referencing only male comparators generally, the Court is unable to determine which allegations apply to which alleged comparators.

Similarly, Dr. Brown directs the Court to her allegations that a "Dr. Cowan," Posterity's Chief Medical Officer, *see* [Doc. 21 at ¶ 10], asked her to perform vasectomy reversal consultations and that an unnamed person "tried to add this request to" a meeting agenda, *see* [Doc. 28 at 5]; *see also* [Doc. 21 at ¶¶ 66–68].[3] Dr. Brown argues that "[t]he male doctor would not have done this unless he and Dr. Brown were performing substantially equal work." [Doc. 28 at 5]. It is unclear to whom "the male doctor" refers—Dr. Cowan asking Plaintiff to perform vasectomy reversals or the unidentified person adding the topic to a meeting agenda—but regardless, this argument is unpersuasive because Plaintiff does not explain (or allege facts showing) how either person's alleged actions necessarily means that the doctor was "performing substantially equal work" to Plaintiff. *See* [*id.*].

Finally, Plaintiff argues that "she alleges that, like the male doctors, she had additional responsibilities regarding Posterity's business operations." [*Id.*]. But Plaintiff never identifies what the male doctors' additional duties were, so as to determine whether her extra duties were substantially equal to the extra duties performed by male comparators. *See* [Doc. 21 at ¶ 101 ("Like the male doctors, Dr. Brown had additional duties outside of her role as Medical Director, even though she was never provided with

---

[3] Plaintiff states in her Response that "[t]he Vice President of Clinical Engagement, a male comparator, tried to add this request on the agenda for the Medical Directors' agenda [sic] because he felt it was an essential topic for all doctors working with Posterity." [Doc. 28 at 5]. But the Second Amended Complaint does not actually allege *who* attempted to add the topic to the agenda; rather, Plaintiff alleges that she "requested to discuss this [topic] at the Medical Director Meeting" and that "[a]fter receiving unanimous consensus on the inappropriate request that Dr. Brown perform these consultations, the agenda item 'Vasectomy Reversal Program—Ownership of '[Free] 15 Minute Consults' within regions' was added to the weekly Medical Director's Meeting Agenda." [Doc. 21 at ¶¶ 66, 68 (emphasis added)].

an additional title to reflect those duties."); *id.* at ¶ 110 ("Dr. Brown and male employees held similar titles, performed patient consultations and surgeries, and had additional duties with respect to Posterity's business operations.")].

Given the lack of precision and factual support in Plaintiff's allegations, the Court respectfully agrees with Posterity that Dr. Brown has not sufficiently alleged that she "was performing work which was substantially equal to that of the male employees considering the skills, duties, supervision, effort and responsibilities of the jobs." *Riser*, 776 F.3d at 1196.[4] The Motion to Dismiss is **GRANTED** as to Claim Two. Claim Two is **DISMISSED without prejudice**.

## II. Claim Three: Wage Discrimination Under the Equal Pay for Equal Work Act

Colorado's Equal Pay for Equal Work Act prohibits employers from discriminating against employees on the basis of sex by "paying an employee of one sex a wage rate less than the rate paid to an employee of a different sex for substantially similar work." Colo. Rev. Stat. § 8-5-102(1).

There is very little case law addressing the pleading requirements of a claim under the EPEWA. Due to the parallels between the EPA and EPEWA, another court in this District "examine[d] the pleading standards courts apply in EPA cases in order to determine whether [the plaintiff had] adequately pled an EPEWA claim." *Prkic v. Sezzle, Inc.*, No. 24-cv-02624-PAB-NRN, 2026 WL 747754, at *4 (D. Colo. Mar. 17, 2026), *recommendation adopted*, 2026 WL 937868 (D. Colo. Apr. 7, 2026); *see also McDonald*

[4] Plaintiff's reliance on *Burke v. New Mexico*, 696 F. App'x 325 (10th Cir. 2017), is respectfully unpersuasive. In *Burke*, the plaintiff represented herself, so she was entitled to liberal construction of her pleading. *See* 696 F. App'x at 327; *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Plaintiff is represented by counsel and is not afforded liberal construction. *Mann v. Boatright*, 477 F.3d 1140, 1148 n.4 (10th Cir. 2007).

*v. People*, 494 P.3d 1123, 1128 (Colo. 2021) ("[I]nsofar as the provisions and purposes of [a Colorado] statute parallel those of the federal enactments, federal case law is highly persuasive." (quotation omitted)). Defendant argues that this Court should do the same. [Doc. 24 at 7]. Dr. Brown, however, "object[s] to using EPA case law to interpret the EPEWA" because, in her view, the EPEWA does not "parallel" the EPA. [Doc. 28 at 6–7]. She notes that while the EPA requires that work be substantially *equal*, 29 U.S.C. § 206(d); 29 C.F.R. § 1620.13(a), the EPEWA prohibits pay discrimination between employees performing "substantially similar" work, Colo. Rev. Stat. § 8-5-102(1). Plaintiff argues, in essence, that the EPEWA provides greater protection against pay discrimination than the EPA. *See* [Doc. 28 at 7].

The EPEWA does not define "substantially similar" work, *see* Colo. Rev. Stat. §§ 8-5-101, 8-5-102(1), but the Court agrees with Plaintiff that the EPEWA's prohibition against pay discrimination for substantially "similar work" is not an exact match to the EPA's prohibition against pay discrimination for substantially "equal work." In interpreting a statute, courts "seek to discern and effectuate the legislature's intent" and will "apply words and phrases according to their plain and ordinary meanings." *People In Int. of B.C.B.*, 569 P.3d 74, 79 (Colo. 2025). "Similar" does not on its face mean "equal." *See Similar*, Webster's Third New Int'l Dictionary 2120 (1993) (defining "similar" as "having characteristics in common : very much alike : comparable . . . alike in substance or essentials").[5] Therefore, the Court agrees that the pleading requirements for an EPA

[5] Furthermore, because the exact meaning of "substantially similar" is not plainly clear from the EPEWA, the Court "may consider an administrative agency's interpretation of the statute," though it is "not bound by this interpretation." *B.C.B.*, 569 P.3d at 79. The Colorado Department of Labor and Employment has stated that "substantially similar work" need not be "identical or equal" and has specifically interpreted EPEWA to provide

claim are not necessarily *identical* to the pleading requirements of an EPEWA claim.

Plaintiff, however, provides no argument explaining the type of allegations she believes are necessary to state a claim under the EPEWA. *See* [Doc. 28 at 7]. And aside from the differing "equal work" and "substantial work" thresholds, the EPEWA and the EPA are strikingly similar. *Compare* Colo. Rev. Stat. § 8-5-102(1), *with* 29 U.S.C. § 206(d)(1). So long as the Court is mindful that the EPEWA requires allegations that the plaintiff was performing substantially similar—not substantially equal—work to that of her male comparators, the Court finds that EPA cases are helpful in determining whether a plaintiff has stated a plausible claim under Rule 12(b)(6). The Court concludes that to state a claim under the EPEWA, Dr. Brown must allege that she was performing work that was substantially *similar*, "based on a composite of skill; effort . . . ; and responsibility," to the work of male employee(s) and that the male employee(s) were paid more. *See* § 8-5-102(1); *Prkic*, 2026 WL 747754, at *4.

Posterity argues that Dr. Brown "fails to provide any specific facts regarding the skills, effort, and responsibilities of Plaintiff compared to the specific male employees, a necessary requirement for her EPEWA claim." [Doc. 24 at 7 (quotation omitted)]. In her response, Plaintiff cursorily asserts that "[she] and the male doctors all performed patient consultations and surgeries and had additional duties with respect to Posterity's business

greater protections that the EPA: "Colorado's [EPEWA] goes further [than the EPA], requiring equal pay for not just "equal" work, but any "substantially similar work, regardless of job title, based on a composite of skill; effort, . . . and responsibility." *See Colo. Dep't of Lab. & Emp.*, Interpretive Notice & Formal Opinion ("INFO") #8 (last updated Dec. 27, 2024), https://cdle.colorado.gov/sites/cdle/files/info_%238_equal_pay_part_1_12.27.24.pdf (quoting Colo. Rev. Stat. § 8-5-102(1) (emphasis omitted)). "Colorado's adoption of a textually broader equal pay mandate comports with its explicit legislative purpose: giving Coloradans a broader right to pay equity than under existing federal law." *Id.* (emphasis added).

operations" and that her work "was substantially similar to, if not exactly the same as, the work of the male doctors." [Doc. 28 at 7].

The Court respectfully agrees with Defendant that Plaintiff's allegations are insufficient to state a plausible claim. The Court's conclusion turns not on the difference between "substantially similar" work, as required by EPEWA, and "substantially equal" work, as required by the EPA, but on the lack of factual averments supporting Plaintiff's claim. *See VDARE Found. v. City of Colorado Springs*, 11 F.4th 1151, 1173 (10th Cir. 2021) ("naked assertions devoid of further factual enhancement" are insufficient to state a claim). As mentioned above, Dr. Brown alleges that, as Medical Director, she "saw patients and worked with Posterity to open new offices" and "performed clinical duties, such as consultations and surgeries." [Doc. 21 at ¶¶ 30, 100]; *see also* [*id.* at ¶ 31]. She alleges that "male employees" with "similar titles" also "performed patient consultations and surgeries." [*Id.* at ¶ 123]. She also alleges that both she and the unidentified male employees "had additional duties with respect to Posterity's business operations," without identifying what those alleged extra duties are. [*Id.*]. These allegations are simply insufficient to plausibly allege that Dr. Brown was performing substantially similar work, based on a composite of skill, effort, and responsibility, to comparator male employees because Dr. Brown provides almost no information about the skill, effort, and responsibilities required for her job duties and the male comparators' job duties. *See Shafer v. Young Auto. Grp., Inc.*, No. 1:17-cv-00160-JNP-EJF, 2018 WL 4688342, at *2 (D. Utah Sept. 28, 2018) (dismissing EPA claim where the plaintiff alleged that she and male comparators had "similar job duties" and "equal duties and responsibilities" but she did not identify what those were); *Prkic v. Sezzle, Inc.*, No. 24-cv-02624-PAB-NRN, 2025

WL 2655933, at *10 (D. Colo. Sept. 17, 2025) (dismissing EPEWA claim where the plaintiff "did not allege details regarding" job responsibilities or specific tasks). Accordingly, the Motion to Dismiss is **GRANTED** as to Claim Three. Claim Three is **DISMISSED without prejudice**.

### III. Claim One: Sex-Based Wage Discrimination Under Title VII

"[A] female Title VII plaintiff establishes a *prima facie* case of sex discrimination by showing that she occupies a job similar to that of higher paid males." *Sprague v. Thorn Americas, Inc.*, 129 F.3d 1355, 1363 (10th Cir. 1997). "Unlike an Equal Pay Act claim, a Plaintiff asserting a Title VII claim is not required to show that her job is 'substantially equal' to that of higher paid employees, only that it is similar." *Martin v. Delta Cnty. Mem'l Hosp. Dist.*, No. 19-cv-01339-STV, 2021 WL 6112878, at *15 (D. Colo. Dec. 23, 2021) (quoting *Sprague*, 129 F.3d at 1362–63).

Posterity's arguments in favor of dismissal of this claim mirror its arguments asserted against the EPA and EPEWA claims; it contends that "Plaintiff fails to provide any specific facts or specific male comparators to satisfy even the lower 'similarity' standard of Title VII" because she alleges "only two specific comparators" and has alleged "dissimilar jobs" between them. [Doc. 24 at 8]. Further, Posterity argues that Plaintiff "does not give any specifics to show her job was sufficiently similar to" the unidentified "male employees." [*Id.*]. In her Response, Dr. Brown asserts that "[a]s discussed above," i.e., in her arguments defending her EPA and EPEWA claims, she "has established that the other male doctors performed work similar to hers" and she has "sufficiently pleaded facts to establish her Title VII wage discrimination claim." [Doc. 28 at 8].

For the reasons explained in more detail above, the Court concludes that Dr.

Brown has not stated a plausible claim for pay discrimination under Title VII. Without any factual allegations detailing how the alleged higher-paid male comparators' job duties and responsibilities were similar to Plaintiff's job duties and responsibilities, the Court finds that Dr. Brown has not stated a plausible claim under Title VII. *See* [Doc. 21 at ¶¶ 98–101 (Plaintiff alleging that she held a "position like that" of higher-paid male employees and "[l]ike the male doctors, Dr. Brown had additional duties outside of her role as Medical Director," but providing insufficient supporting factual allegations); *see also Martin*, 2021 WL 6112878, at *15 (at summary judgment stage, dismissing Title VII claim because the plaintiff did not "inform the Court of the substance of the jobs performed" by the plaintiff and the male comparators). The Motion to Dismiss is **GRANTED** as to Claim One. Claim One is **DISMISSED without prejudice** for failure to state a claim.

## IV. Claim Eight: Colorado Wage Claim Act

In Claim Eight, Plaintiff alleges that Defendant violated the CWCA by "fail[ing] to pay Dr. Brown the [administrative] bonus that she earned." [Doc. 21 at ¶ 209]; *see also* [*id.* at ¶¶ 204–06]. "Under the CWCA, an employee may sue an employer for unpaid wages." *Sommers v. Marketplace Realty, LLC*, 585 P.3d 271, 274 (Colo. App. 2025). The CWCA provides that "[w]hen an interruption in the employer-employee relationship by volition of the employer occurs, the wages or compensation for labor or service earned, vested, determinable, and unpaid at the time of such discharge is due and payable immediately." Colo. Rev. Stat. § 8-4-109(1)(a).[6] "Wages" or "compensation" includes

[6] Dr. Brown does not cite the specific provision of the CWCA she invokes in Claim Eight. *See* [Doc. 21; Doc. 28]. Although this provision concerns payment for wages and compensation after the employee-employer relationship ends "by volition of the employer," the Court infers that Claim Eight is asserted under this provision because Plaintiff argues that she was constructively discharged. *See* [Doc. 21 at ¶¶ 86–87].

"[b]onuses or commissions earned for labor or services performed in accordance with the terms of any agreement between an employer and employee." *Id.* § 8-4-101(14)(a)(II). The CWCA also states, however, "[n]o amount is considered to be wages or compensation until such amount is earned, vested, and determinable, at which time such amount shall be payable to the employee pursuant to this article." *Id.* § 8-4-101(14)(a)(I).

The Parties dispute whether, for purposes of the CWCA, the administrative bonus must have been "earned, vested, and determinable." Posterity argues that Plaintiff must allege that the administrative bonus was earned, vested, and determinable to state a plausible claim. [Doc. 24 at 9]. On the other hand, Dr. Brown argues that she "only must show that the bonus was earned," relying on the Colorado Supreme Court's decision in *Nieto v. Clark's Market, Inc.*, 488 P.3d 1140 (Colo. 2021). *See* [Doc. 28 at 8–9].

In *Nieto*, there was an apparent conflict between the CWCA's general definition of "wages" or "compensation," which states that "[n]o amount is considered to be wages or compensation until such amount is <u>earned, vested, and determinable</u>, at which time such amount shall be payable to the employee pursuant to this article," § 8-4-101(14)(a)(I) (emphasis added), and the statute's more specific statement that "[i]f an employer provides paid vacation for an employee, the employer shall pay upon separation from employment all vacation pay <u>earned and determinable</u> in accordance with the terms of any agreement between the employer and the employee," *id.* § 8-4-101(14)(a)(III) (emphasis added); *see also Nieto*, 488 P.3d at 1145. In other words, the *Nieto* court was required to determine whether vacation pay needed to be just earned and determinable,

---

Moreover, Defendant cites this provision in its Motion to Dismiss, *see* [Doc. 24 at 9–10], and Plaintiff does not take issue with Defendant's reliance on this provision, *see* [Doc. 28].

as set out in § 8-4-101(14)(a)(III), or must be earned, *vested*, and determinable, as set out in § 8-4-101(14)(a)(I). *Nieto*, 488 P.3d at 1145.

For two reasons, the Colorado Supreme Court held that the CWCA requires payment of vacation pay that is earned and determinable—not vested. *Id.* at 1142, 1145–46. First, the *Nieto* court determined that the legislature's decision to omit the word "vested" from subsection (14)(a)(III) was an intentional drafting choice. *Id.* at 1145. And "where a term is used in some, but not all, analogous provisions of a statute, [courts] presume that its omission from certain provisions was intentional." *Id.* Second, "when confronted with an irreconcilable conflict between multiple provisions of a statute, [courts] must apply the most specific provision." *Id.*; *see also Martinez v. People*, 455 P.3d 752, 756 (Colo. 2020) ("Where statutes conflict irreconcilably, the more specific provision typically 'prevails as an exception to the general provision.'" (quoting Colo. Rev. Stat. § 2-4-205)). The *Nieto* court determined that "to the extent [the definition of vacation pay] conflicts with the general definition of wages or compensation in subsection (14)(a)(I) . . ., the specific vacation pay definition in subsection (14)(a)(III) controls." 488 P.3d at 1145.

The entirety of Dr. Brown's argument under *Nieto* is as follows: "*Nieto* held that vacation pay only had to be earned and determinable because of the specific language of the statute; accordingly, Dr. Brown only must show that the bonus was earned[.]" [Doc. 28 at 8–9]. This cursory argument fails to present the relevant issue(s) to the Court in a meaningful or helpful way, given the fact that Dr. Brown alleges she was deprived of a bonus, not vacation pay (like *Nieto*). The Court assumes that Dr. Brown's position is that, to the extent there is a conflict between the CWCA's general definition of "wages" or "compensation," which excludes amounts that are not earned, vested, and determination,

*see* § 8-4-101(14)(a)(I), and its reference to bonuses, which includes "[b]onuses or commissions earned for labor or services performed in accordance with the terms of any agreement between an employer and employee," *see* § 8-4-101(14)(a)(II), the Court should follow *Nieto* and apply the more specific provision over the general one.[7] For its part, Posterity argues that "Plaintiff incorrectly extends the holding in *Nieto*," but it does not engage in developed analysis. [Doc. 33 at 5]. Ultimately, the Court concludes that it need not decide this issue of state law[8] because even assuming that the CWCA only requires that the bonus be earned (and not vested or determinable), the Court concludes that Plaintiff's allegations remain insufficient to state a claim.

Posterity argues that Claim Eight should be dismissed because Plaintiff does not allege that the administrative bonus was earned or unpaid. *See* [Doc. 24 at 9–10]. Specifically, it notes that "Plaintiff does not allege any dates or years pertaining to the alleged work performed or the one administrative bonus paid," so it is "left to wonder whether Plaintiff is claiming an administrative bonus was earned every year or just some years" and when Plaintiff performed the alleged services. [*Id.* at 10]. It also contends that Plaintiff "does not allege that she was entitled to the administrative bonus more than once," and since she alleges that she received the bonus one time, she has not alleged that the bonus remained unpaid at the end of her employment. [*Id.* at 10–11].

---

[7] Another court in this District has decided, based on *Nieto*, that a bonus need not be "vested" to be compensable under the CWCA. *See Burnett v. Fin. of Am. Mortg., LLC*, No. 23-cv-02381-REB-STV, 2025 WL 605267, at *5 (D. Colo. Feb. 24, 2025) ("[T]he clear import of *Nieto* is to obviate any need for Mr. Burnett to prove that his bonus was vested."). However, Judge Blackburn declined to rule that *Nieto* also obviated the plaintiff's need to prove that the bonus was "determinable." *Id.* at *5 n.11.

[8] "[F]ederal courts should strive to avoid deciding issues of state law when, as here, it is possible to do so." *Favela v. City of Las Cruces ex rel. Las Cruces Police Dep't*, 431 F. Supp. 3d 1255, 1279 (D.N.M. 2020) (quotation omitted).

As Defendant points out, Plaintiff provides only minimal details about the alleged administrative bonus. She alleges that Posterity "was to compensate Dr. Brown for her work on Posterity's digital platform" and that the bonus "was to be paid out in the calendar year following the year in which it was earned." [Doc. 21 at ¶¶ 26, 28]. She later alleges that she "earned the administrative bonus by performing extra work developing Posterity's digital platform," but "Posterity "only paid Dr. Brown an administrative bonus one time." [*Id.* at ¶¶ 205, 207–09]. From these allegations, it is unclear (1) when Dr. Brown performed these services to earn the administrative bonus, and (2) when Posterity paid Dr. Brown her one administrative bonus (and, relatedly, whether any administrative bonus remained unpaid at the conclusion of Dr. Brown's employment).

Dr. Brown insists that she "never alleges that she stopped performing work on Posterity's digital platform," and because she worked at Posterity for over two years, "the fact that she was paid an administrative bonus only once necessarily means she was not paid the bonus in the second year." [Doc. 28 at 9]. The Court is respectfully unpersuaded by this argument, which asks the Court to make unsupported inferential leaps and assume the existence of facts not alleged in the Second Amended Complaint. Because Plaintiff does not raise any factual allegations establishing when the administrative bonus was earned or whether it was unpaid—information that is certainly within Dr. Brown's possession—the Court concludes that she has not stated a plausible CWCA claim with respect to the administrative bonus. The Motion to Dismiss is **GRANTED** with respect to Claim Eight, and Claim Eight is **DISMISSED without prejudice**.

## V. Claim Nine: Colorado Wage Claim Act

Claim Nine is based on Posterity's alleged "[f]ailure to pay vacation and sick leave."

[Doc. 21 at 24]. Plaintiff alleges that (1) she earned and accrued vacation and sick leave working for Posterity; (2) the value of her "vacation and sick leave became vested and determinable on the date of her resignation," and (3) Posterity's "failure to pay Dr. Brown her vacation and sick leave at the time of her constructive discharge was willful." [*Id.* at ¶¶ 215–20]; *see also* [*id.* at ¶ 213 ("In Colorado, vacation and sick leave are wages.")].

Defendant argues that Claim Nine should be dismissed to the extent it is based on unpaid sick leave because Plaintiff does not allege that she was entitled to have unused sick leave paid out under her employment contract. [Doc. 24 at 11]. Instead, Defendant points out, Plaintiff alleges only that her "employment agreement provided that she would receive paid vacation." [Doc. 21 at ¶ 214]. This matters because "[b]enefits are earned, vested, and determinable" under the CWCA "when an employee has an enforceable right to receive payment for such benefits pursuant to an employment agreement." *Gomez v. Children's Hosp. Colo.*, No. 18-cv-00002-MEH, 2018 WL 3303306, at *5 (D. Colo. July 8, 2018) (citing *Fang v. Showa Entetsu Co.*, 91 P.3d 419, 422 (Colo. App. 2003)).

In her Response, Dr. Brown says that she "should have used the words Paid Time Off (PTO) instead of sick leave for" Claim Nine. [Doc. 28 at 9]. She says that "[t]he body of the Complaint discusses only two types of paid leave: vacation pay and PTO," and she contends that her allegations make clear that, for Posterity employees, PTO encompasses sick leave. *See* [*id.* at 9–10]. Plaintiff asserts that it does not matter whether she uses the term "sick leave" or "PTO" because the Court is required to construe all reasonable inferences in her favor, the Court "may infer that what Dr. Brown referred to in this cause of action is her PTO, and that PTO encompasses her paid sick leave." [*Id.* at 10]. In its Reply, Defendant asserts that Plaintiff's argument is an improper attempt

to amend the Second Amended Complaint through her Response. [Doc. 33 at 6].

The Court respectfully disagrees with Plaintiff's argument. A plaintiff cannot amend her pleading by alleging new facts in her response brief. *In re Qwest Commc'ns Int'l, Inc.*, 396 F. Supp. 2d 1178, 1203 (D. Colo. 2004). But even if the Court does not view Plaintiff's clarifications in her Response as an improper attempt to amend her Second Amended Complaint, and only interprets "PTO" as a synonym for "sick leave," Plaintiff's attempt at clarification in her response brief does not save her claim. Even construing "PTO" and "sick leave" interchangeably, Plaintiff does not actually allege that her employment contract provided PTO. *See generally* [Doc. 21]. She alleges only that the employment agreement "provided that she would receive paid vacation." [*Id.* at ¶ 214 (emphasis added)]. And Plaintiff makes clear in her Second Amended Complaint and in her response brief that vacation pay and PTO are not the same. *See, e.g.*, [*id.* at ¶ 39 ("On April 2, 2023, Dr. Cowan emailed all physicians to inform them that they would have four weeks of vacation, plus nine additional days of Paid Time Off (PTO).")]; *see also* [Doc. 28 at 9–10 ("The body of the Complaint discusses only two types of paid leave: vacation pay and PTO. . . . Dr. Brown combines vacation and PTO (sick leave) when she states that she had accrued 37 days that Posterity should have paid out to her." (emphasis added))].[9]

[9] In her response brief, Plaintiff argues that she "does allege that an agreement between her and Posterity gave her [a] right to PTO" because she alleges that "Dr. Cowan emailed all physicians to inform them that they would have four weeks of vacation, plus nine additional days of PTO," and she "continued to work for Posterity for a year after that email was sent." [Doc. 28 at 10 (citing Doc. 21 at ¶¶ 39, 86)]. In so arguing, Plaintiff appears to suggest that this email created a binding contract. *See* [*id.* at 10–11]. But Plaintiff does not make this theory of contract clear in her Second Amended Complaint. *See* [Doc. 21 at ¶ 39]. Moreover, Plaintiff alleges that she was already contractually bound to work for Posterity at the time of Dr. Cowan's email, *see* [*id.* at ¶¶ 25, 39, 53],

Plaintiff, who is represented by counsel, is not entitled to a liberal construction of her Second Amended Complaint. *Mann v. Boatright*, 477 F.3d 1140, 1148 n.4 (10th Cir. 2007).[10] She has not alleged that her sick leave—or PTO—was earned, vested, and determinable based on her employment agreement. The Motion to Dismiss is **GRANTED** with respect to this limited portion of Claim Nine, and this portion of Claim Nine is **DISMISSED without prejudice**.

## VI. Claim Twelve: Breach of Contract

To state a breach of contract claim under Colorado law, a plaintiff must allege "(1) the existence of a contract; (2) performance by the plaintiff or some justification for nonperformance; (3) failure to perform the contract by the defendant; and (4) resulting damages to the plaintiff." *McAuliffe v. Vail Corp.*, 69 F.4th 1130, 1144 (10th Cir. 2023) (quoting *W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992)). In her Second Amended Complaint, Dr. Brown alleges that Posterity breached her employment agreement by (1) not paying her an administrative bonus, [Doc. 21 at ¶ 258]; (2) not paying her a performance bonus, [*id.* at ¶¶ 260–62]; (3) not paying her for unused vacation time, [*id.* at ¶ 263]; and (4) not paying for her malpractice insurance tail coverage, [*id.* at ¶¶ 264–66]. Defendant argues that Plaintiff cannot state a plausible claim on any of these bases. [Doc. 24 at 12–14].

---

and a pre-existing duty is not valid consideration, *see Kennedy v. William R. Hudon, Inc.*, 659 F. Supp. 900, 905 (D. Colo. 1987); 17 C.J.S. Contracts § 166 (Apr. 2026 update). In other words, Plaintiff does not plausibly allege that Dr. Cowan's email created a binding contract that guaranteed PTO.

[10] In the seven months since the Motion to Dismiss was filed, Plaintiff did not seek leave to amend her pleading to clarify the nature of Claim Nine. *See Young v. Colo. Dep't of Corr.*, 94 F.4th 1242, 1256 (10th Cir. 2024) (recognizing that a plaintiff may "file[] a prophylactic motion for leave to amend that [is] separate from [her] response brief").

***Administrative Bonus.*** Posterity contends that Plaintiff cannot state a claim based on non-payment of the administrative bonus because she "does not provide any details about the alleged agreement," asserting only that the agreement required Plaintiff to perform "all the work necessary to earn her administrative bonus." [*Id.* at 12 (citing Doc. 21 at ¶¶ 256, 258)]. Dr. Brown responds only that "[a]bove, Dr. Brown discusses the administrative bonus and how it is a contractual agreement because it was part of her employment contract." [Doc. 28 at 12].

For similar reasons as those explained above with respect to the CWCA, the Court respectfully agrees that Dr. Brown has not stated a plausible breach of contract claim based on the administrative bonus. Plaintiff does not allege *facts* concerning her performance on the contract (such that the administrative bonus was due) or *facts* establishing that Defendant breached the contract. *See* [Doc. 21 at ¶¶ 205, 208, 256, 258 (alleging that Plaintiff performed "all the work necessary" to earn the administrative bonus and that Defendant "only paid . . . an administrative bonus one time," but not clearly establishing when the work was performed vis-à-vis when the one administrative bonus was paid)]. And her conclusory allegation that "Posterity breached the contract by failing to pay Dr. Brown her administrative bonus," [*id.* at ¶ 259], is insufficient to state a claim, *see Twombly*, 550 U.S. at 555 ("a formulaic recitation of the elements of a cause of action" is not enough to state a claim).

***Performance Bonus.*** Next, Defendant argues that the portion of Plaintiff's breach of contract claim based on the alleged failure to pay a performance bonus fails because Dr. Brown does not "allege that she performed under the contract," instead "admit[ting] that she did not perform." [Doc. 24 at 12–13]; *see also* [Doc. 21 at ¶ 260 ("Dr. Brown . . .

did not achieve the metrics to receive a performance bonus.")]. Dr. Brown responds that she "has presented enough facts for the Court to infer that her hitting the performance metrics was rendered impracticable or impossible due to Posterity's conduct." [Doc. 28 at 12]. In other words, Plaintiff argues that her claim remains viable despite her non-performance because performance was not possible. *See* [*id.*].

The second element of a breach of contract claim requires the plaintiff to "plead facts explaining [her] failure to perform." *Carraway v. State Farm Fire & Cas. Co.*, No. 22-1370, 2023 WL 5374393, at *4 (10th Cir. Aug. 22, 2023). In other words, she must "explain why [her] . . . efforts were impossible, impractical, or otherwise impeded." *Id.* Plaintiff does not do so. She first directs the Court to her allegation that "Dr. Brown did not hit the performance metrics because they were unrealistic." *See* [Doc. 21 at ¶ 230]. But there are no supporting *factual* allegations that actually explain Dr. Brown's failure to perform. She does not, for example, identify what the performance metrics were or explain why they were "unrealistic."

Dr. Brown also argues that Posterity "assigned [her] non-revenue-generating work, which affected her ability to meet the performance metrics" required for the performance bonus. [Doc. 28 at 13 (citing Doc. 21 at ¶¶ 74, 143, 149, 159–60, 176, 182)]. But Plaintiff does not allege *any* facts plausibly tying her non-revenue-generating work to her failure to meet her performance metrics. She alleges only that "[n]on-revenue generating consultations would affect Dr. Brown's performance bonus." [Doc. 21 at ¶ 160]. This single, conclusory, conditional allegation—without any supporting factual averments detailing this work or explaining how this work made it *impossible* to meet her performance metrics—does not amount to "facts explaining [her] failure to perform."

*Carraway*, 2023 WL 5374393, at *4. Accordingly, the Court agrees that Plaintiff does not state a plausible breach of contract claim based on the performance bonus.

***Vacation Time.*** Posterity next argues that Plaintiff fails to state a breach of contract claim based on unpaid vacation time because she does not allege any factual allegations in support, such as "when the vacation accrue[d]," "whether there were any conditions to Dr. Brown accruing the leave," or "how much leave she allegedly accrued and did not use." [Doc. 24 at 13]. Defendant argues that it is "left to wonder what exactly Plaintiff is claiming," so it "does not have sufficient facts to prepare an appropriate defense." [*Id.*].

The Court is respectfully unpersuaded by this argument. Plaintiff alleges that, under her employment agreement, she "would receive three weeks of vacation time," with an additional week accruing each year of employment. [Doc. 21 at ¶ 24]. Dr. Brown "earned her vacation . . . leave by performing work for Posterity," and at the conclusion of her employment, she "had accrued 37 days of vacation and sick leave that should have been paid out to her." [*Id.* at ¶¶ 216–27]. Posterity did not pay Dr. Brown for her unused vacation, which resulted in damages. [*Id.* at ¶¶ 220–21].

These allegations are sufficient to allege the existence of a contract, Plaintiff's performance on the contract, Defendant's non-performance on the contract, and resulting damages. *McAuliffe*, 69 F.4th at 1144. Although Plaintiff does not clarify exactly how much vacation time (versus sick leave) she had accrued and was owed, the Court is not persuaded that this warrants dismissal of this portion of Claim Twelve or precludes Defendant from preparing a defense to the claim. The Court will not dismiss this portion of Claim Twelve.

***Insurance Tail Coverage.*** Plaintiff alleges that her employment agreement required Posterity to pay for Plaintiff's malpractice insurance tail coverage "if [she] is terminated without cause." [Doc. 21 at ¶ 264]. Dr. Brown claims that Posterity breached this portion of the employment agreement because it "never paid for Dr. Brown's tail coverage." [*Id.* at ¶ 266].

Defendant argues that this portion of Claim Twelve should be dismissed because "Plaintiff fails to allege that Posterity failed to perform." [Doc. 24 at 13]. Specifically, Defendant argues that "Plaintiff fails to allege the requirement for tail coverage to be paid—that [she] was terminated without cause." [*Id.*]. Instead, Defendant notes, Plaintiff alleges that she resigned from her employment with Posterity. *See* [*id.*]; *see also* [Doc. 21 at ¶ 152]. Dr. Brown responds that her allegations show that she was constructively discharged and that her resignation was not voluntary. [Doc. 28 at 14]; *see also* [Doc. 21 at ¶¶ 86–87]. Then, in its reply brief, Posterity argues for the first time that Plaintiff's allegations are insufficient to plausibly allege a constructive discharge, so her "resignation was voluntary." [Doc. 33 at 9–10].

The Court declines to dismiss this portion of Claim Twelve at this time. First, neither Party has filed a copy of the employment agreement,[11] which would permit the Court to review the actual contractual term(s) at issue. This issue could be one that

---

[11] In resolving a Rule 12(b)(6) motion, a court must ordinarily "restrict its review to only the allegations within the four corners of the complaint." *Brown v. City of Tulsa*, 124 F.4th 1251, 1263 (10th Cir. 2025) (quotation omitted). However, a court may consider "documents referenced in the complaint that are central to the plaintiff's claims, provided their authenticity is undisputed." *Id.* If either Party had submitted an authentic copy of the employment agreement, it is likely that the Court would have determined that the employment agreement is central to Plaintiff's claims and could be considered in ruling on the Motion to Dismiss.

requires contractual interpretation (for example, what it means for Plaintiff's employment to be "terminated"),[12] but without insight into the employment agreement's exact terms, the Court is unable to resolve the Parties' arguments. Moreover, Defendant's reply brief raises new arguments about the sufficiency of Plaintiff's constructive discharge allegations, and "[g]enerally, the nonmoving party should be given an opportunity to respond to new material raised for the first time in the movant's reply." *Green v. New Mexico*, 420 F.3d 1189, 1196 (10th Cir. 2005). The Court has discretion to either disregard the new arguments or permit a surreply, *LNV Corp. v. Hook*, No. 14-cv-00955-RM-CBS, 2015 WL 5679723, at *3 (D. Colo. Sept. 25, 2015), and the Court, in its discretion, will disregard Defendant's new reply-brief arguments.

In sum, the Motion to Dismiss is **GRANTED in part** and **DENIED in part** with respect to Claim Twelve. The Motion is **GRANTED** to the extent Plaintiff's breach of contract claim is based on the non-payment of the administrative bonus or the performance bonus, and those limited portions are **DISMISSED without prejudice**. The Motion is **DENIED** to the extent Dr. Brown alleges that Posterity breached the contract by not paying Plaintiff her vacation time and by not paying for Plaintiff's tail coverage.

## CONCLUSION

For the reasons set forth above, **IT IS ORDERED** that:

(1) The Posterity Fertility PC Rule 12(b)(6) Partial Motion to Dismiss [Doc. 24] is **GRANTED in part** and **DENIED in part**;

[12] Indeed, the lone case Defendant cites in support of its argument required the court to interpret the parties' employment agreement at the summary-judgment stage. *See Giesler v. Sandridge Energy, Inc.*, No. 21-cv-00904-HE, 2022 WL 1518045, at *2 (W.D. Okla. Apr. 5, 2022).

(2) Claims One, Two, Three, and Eight are **DISMISSED without prejudice**;

(3) Claim Nine, to the extent it is based on sick leave, is **DISMISSED without prejudice**; and

(4) Claim Twelve, to the extent it is based on non-payment of the administrative bonus or the performance bonus, is **DISMISSED without prejudice**.

DATED: September 23, 2026

BY THE COURT:

Nina Y. Wang
United States District Judge